FILED

2010 Mar-25  AM 10:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| JASON BOLIN; RACHEL BOLIN, | } | |
| | } | |
| Plaintiffs, | } | |
| | } | |
| vs. | } | CASE NO. 7:08-cv-01100-SLB |
| | } | |
| SUPERIOR WELL SERVICES, INC.; | } | |
| SUPERIOR GP, LLC; BRADFORD | } | |
| RESOURCES, LTD.; GEOMET, | } | |
| INC.; FMC TECHNOLOGIES, INC., | } | |
| | } | |
| Defendants. | } | |

### MEMORANDUM OPINION

This case is currently before the court on defendants Superior Well Services, Inc.

("Superior, Inc."), Superior GP, LLC ("Superior GP"), and Bradford Resources, Ltd.'s

("Bradford") (collectively the "Superior defendants") Motion to Dismiss.  (Doc. 77.)[1]

Plaintiffs Jason Bolin and his wife, Rachel Bolin, (the "Bolins") have sued the Superior

defendants for the personal injuries suffered by Jason Bolin while working for Superior Well

Services, Ltd. ("Superior Ltd."), alleging claims of negligence and breach of implied

warranty.  (*See* Doc. 73 at ¶¶ 10-27, 33-42.)  Rachel Bolin has also brought a claim for loss

of services and consortium.  (*Id.* at ¶¶ 47-49.)  Upon consideration of the record, the

submissions of the parties, the arguments of counsel, and the relevant law, the court is of the

opinion that the Superior defendants' Motion to Dismiss is due to be granted in part and

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each
document as it is filed in the court's record.

denied in part.

## I. <u>MOTION TO DISMISS STANDARD</u>

When deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept the allegations set forth in the complaint as true." *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993) (citations omitted); *see also Rivell v. Private Healthcare Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).

> The allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs. [*Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002).] However, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, [545], 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.2007). "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295 (quoting *Twombly*, [550 U.S. at 556]). This rule does not "impose a probability requirement at the pleading stage." *Twombly*, [550 U.S. at 556]. Instead, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element. *Id.* "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Watts*, 495 F.3d at 1296 (quoting *Twombly*, [550 U.S. at 556]).

*Rivell*, 520 F.3d at 1309.

"[T]he threshold that a complaint must meet to survive a motion to dismiss is 'exceedingly low.'" *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 38 (M.D. Ala. 2001) (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). "[A] defendant thus bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-736 (11th Cir. 1998) (citing *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800

F.2d 1577, 1579 (11th Cir. 1986)).

## II.  FACTUAL AND PROCEDURAL HISTORY

The facts of the case, taken from the Second Amended and Re-Stated Complaint,

(Doc. 73), and assumed as true for purposes of a motion to dismiss, are as follows:

1. The plaintiffs, Jason Bolin and his wife, Rachel Bolin, are residents of Tuscaloosa County, Alabama.  On November 16, 2006 Jason Bolin was an employee of Superior Well Services, Ltd. ("Superior Ltd.").

2. The defendant, Superior Well Services, Inc., ("Superior, Inc.") is a Delaware corporation engaged in the oil field service business.  Superior, Inc., operates a service center located in Cottondale, Tuscaloosa County, Alabama.

3. The defendant, Superior GP, LLC, ("Superior GP") is a Pennsylvania limited liability company wholly owned and managed by Superior, Inc.

4. In November 2006, defendant Bradford Resources, Ltd., ("Bradford") was a Pennsylvania limited partnership wholly owned by Superior Inc.  After the accident made the basis of this suit Bradford merged into Superior Well Services, Ltd.

5. The defendant, GeoMet, Inc., ("GeoMet"), is a foreign corporation with a place of business in Alabama.  GeoMet is a developer and operator of methane gas properties.

6. The defendant, FMC Technologies, Inc., ("FMC"), is a Texas corporation. FMC designs, manufactures and assembles fluid delivery systems and components. FMC does business in Alabama.

7. On or about November 16, 2006, Jason Bolin was working for Superior Ltd. in Bibb County, Alabama participating in a fluid-based stimulation service under the direction of GeoMet, Inc.  The stimulation service, known as fracturing, is designed to improve the flow of oil and natural gas from producing zones.  The procedure involves pumping a fluid mixture into the ground/ formation at high pressures to create a fracture in the chosen formation that becomes a pathway for hydrocarbons to flow into the wellbore and increase the bore's productivity.

8. On November 16, 2006, while the Superior crew was preparing for fracking operations to begin, components of the fluid system referred to as "treatment

iron" suddenly broke or exploded with such force that Jason was thrown 8 to 10 feet into a fluid pit filled with contaminants and chemicals.

9. As a result of the explosion, Jason suffered severe and life threatening injuries, including a severely fractured hip and leg, severed arteries, loss of skin from above the right knee up to Jason's right armpit, and numerous other fractures and injuries. As a result of the injuries and complications, Jason's right leg had to be amputated.

(Doc. 73 at ¶¶ 1-9.)

The Bolins filed their initial Complaint against the Superior defendants and GeoMet in the Circuit Court of Tuscaloosa County, Alabama on May 14, 2008, alleging seven counts. (*See* Doc. 1.) Count One asserted a claim for compensation and medical expenses under the Alabama Worker's Compensation Act against Superior, Inc. (*Id.*, Ex. A at 19-20.) Count Two alleged a claim under the Alabama Extended Manufacturer's Liability Act ("AEMLA") and dual capacity doctrine against Superior, Inc. and Fictitious defendants A, B, and C. (*Id.* at 20.) Count Three alleged a negligent and/or wanton failure to require the incorporation of certain safety devices against GeoMet. (*Id.* at 21.) Count Four alleged a negligent and/or wanton failure to provide a reasonably safe place to work and reasonably safe equipment to work with against Superior Ltd., Superior GP, and Bradford, specifically averring a failure to design and/or supply a safe fluid delivery system. (*Id.* at 21-22.) Count Five alleged a negligent and/or wanton failure to advise, recommend, or require certain safety features against Fictitious defendants D, E, and F. (*Id.* at 22-23.) Count Six alleged a claim for the willful removal or failure to attach certain safety features under section 25-5-53 of the Alabama Code against Fictitious defendants G, H, and I. (*Id.* at 23-24.) And finally, under

4

Count Seven, Rachel Bolin alleged a claim for loss of services and consortium against all defendants.  (*Id.* at 24.)

The Superior defendants, along with Superior Ltd., removed the case on June 20, 2008, with the exception of Count One, the worker's compensation claim, which remains pending in state court.  (*See id.*)  GeoMet joined in the Notice of Removal.  (Doc. 2.)  On September 5, 2008, the Bolins filed an Amended Complaint.  (Doc. 17.)  The Amended Complaint, which included five counts, deleted Counts One, Five, and Six of the initial Complaint, and added a claim against FMC, set out in Count Two of the Amended Complaint.  (*See* Doc. 17.)

After conducting some discovery, the Bolins, on October 21, 2009 stipulated to the dismissal of Superior Ltd.  (Doc. 63.)  Then, on October 30, 2009, the Bolins filed a Motion to Amend Complaint, (Doc. 70), which this court granted on November 5, 2009, (Doc. 72).  The Bolins subsequently filed their Second Amended and Re-Stated Complaint on November 6, 2009, alleging nine counts.  (Doc. 73.)

In response to the Bolins' Second Amended and Re-Stated Complaint, the Superior defendants, on November 20, 2009, filed a Motion to Dismiss, requesting that the court "dismiss, with prejudice, all Counts of [the Bolins'] Second Amended and Re-Stated Complaint directed against [the Superior defendants]."  (Doc. 77 at 1.)  The court entered a Submission Order on November 23, 2009.  (Doc. 78.)  Pursuant to the court's order, the Bolins filed their Opposition to Motion to Dismiss on December 14, 2009.  (Doc. 81.)  The Superior defendants filed their reply brief on January 4, 2010.  (Doc. 84.)  The court

subsequently held oral argument on the Superior defendants' motion on January 21, 2010. (*See* Doc. 78.)

## III.  DISCUSSION

In their Motion to Dismiss, the Superior defendants request that the court "enter an order dismissing Counts One, Two, Three, Five, Six, Seven, and Nine" of the Bolins' Second Amended and Re-Stated Complaint.  (Doc. 77 at 1.)  Specifically, the Superior Defendants argue that the Bolins' Second Amended and Re-Stated Complaint is "significantly different" from the Bolins' initial Complaint and their Amended Complaint.  (*Id.* at 2-3.)  For that reason, the Superior defendants maintain that several of the claims asserted by the Bolins in their Second Amended and Re-Stated Complaint "do not relate back to the filing of either of the two previous complaints and are time-barred."  (*Id.* at 3.)  Additionally, the Superior defendants assert that "several of the counts fail to state a cause of action recognized under Alabama law," while others are insufficiently detailed to comply with the pleading requirements of Fed. R. Civ. P. 8(a)(2).  (*See id.*)

## A.      COUNT ONE

Count One of the Bolins' Second Amended and Re-Stated Complaint asserts a claim of negligence against Superior, Inc., alleging in part that "[t]he control exercised by Superior GP and Superior Inc. over Superior Ltd. was so pervasive and so dominating that Superior Ltd. had no real separate corporate existence," and that "[b]ecause of the control and

6

domination Superior GP and Superior Inc. exercised over Superior Ltd. those two entities owed a duty to provide safe equipment and working conditions to those persons who worked out of the Cottondale, Alabama facility." (Doc. 73 at ¶¶ 10, 12, 15.)  Count One then alleges that Superior, Inc. negligently or wantonly breached this duty by "direct[ing] Superior Ltd. and Bradford to avoid all 'unnecessary costs,'" and by "fail[ing] to require that Superior Ltd. maintain equipment inspecting, monitoring and testing procedures and the use of appropriate pressure relief/sustaining valves, warning valves and other safety features." (*See id.* at ¶ 17.)

The Superior defendants first maintain that Count One is due to be dismissed because it does not relate back to the Bolins' initial Complaint or Amended Complaint, and is therefore barred by the applicable statute of limitations under Alabama law. (Doc. 77 at 6-9.) Although the Superior defendants are correct that Count One would be barred if it did not relate back to the initial Complaint or Amended Complaint, *see* Ala. Code § 6-2-38(l) (1975) (requiring that "actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section . . . be brought within two years"), the court agrees with the Bolins that Count One relates back to the initial Complaint, (*see* Doc. 81 at 11-18).

Under Rule 15(c)(1) of the Federal Rules of Civil Procedure, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . (A) the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1).  Thus, under Fed. R. Civ. P. 15(c)(1)(A), Count One relates back to the initial Complaint or Amended Complaint if it "arose out of the conduct, transaction, or occurrence set forth or

attempted to be set forth in the original pleading." *See* Ala. R. Civ. P. 15(c)(2).

The Alabama Supreme Court has discussed in detail the relation-back doctrine on multiple occasions. *See, e.g.*, *Ex Parte Johnston-Tombigbee Furniture Mfg. Co.*, 937 So. 2d 1035, 1037-47 (Ala. 2005); *U.S. Steel Corp. v. McGehee*, 80 So. 2d 256, 260 (Ala. 1955). In *McGehee*, the court stated the criteria for determining whether an amendment relates back:

> A new cause of action is not set up by amendment, within the rule governing the statute of limitations in such cases, where the same substantial facts are pleaded merely in a different form, so that a recovery on either count of the complaint would bar a recovery on the other. . . . As long as the plaintiff adheres to the contract or the injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action. The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope . . . of the testimony.

*McGehee*, 80 So. 2d at 260 (citation omitted) (internal quotation marks omitted).

To be sure, the Alabama Supreme Court recently revisited the relation-back doctrine, but did not depart from *McGehee*. *See Johnston-Tombigbee*, 937 So. 2d at 1038, 1045-47. Instead, it clarified that the "focus [is] on the nature of the transaction or occurrence," *id.* at 1045, and reiterated that an amendment relates back, even if it sets forth a new cause of action, "so long as the original pleading gives fair notice of the general fact situation out of which the claim . . . arises," *id.* at 1046 (quoting *Sonnier v. Talley*, 806 So. 2d 381, 386-87 (Ala. 2001)). Applying the test to the case before it, the court considered whether a corporation's amended complaint, which added claims of conversion, unjust enrichment, and breach of fiduciary duty against two brothers who held title to real property claimed by the corporation, related back to its initial complaint, in which the corporation had sought only

to reform the deed, or, in the alternative, to quiet title to the property.  *See id.* at 1036.  The lower court held that the amended complaint did not relate back, reasoning that it changed a "crucial factual allegation."  *Id.* at 1039.  Specifically, in the initial complaint, the corporation had alleged that title to the property appeared in the brothers' names due to the parties' mutual mistake, but in the amended complaint, the corporation alleged that title to the property appeared in the brothers' names because they wrongfully intended to vest title in their names individually "in order to build their personal portfolios."  *Id.*  On appeal, the Alabama Supreme Court reversed, pointing out that "the nature of the relief sought, that title to the [property] be vested in [the corporation], ha[d] not changed.  Also unchanged [were] the facts of the occurrence that gave rise to [the corporation's] claim, i.e., the purchase of the [property]."  *Id.* at 1039, 1046-47.  The reason why title in the property appeared in the brothers' names was therefore unimportant to the court for purposes of the relation-back doctrine.  *See id.*

Here, Count Two of the initial Complaint asserted that Superior, Inc. "designed, manufactured, assembled or otherwise placed into the stream of commerce the fluid delivery system" that caused the November 16, 2006 explosion, alleging that the "fluid delivery system was defective and unreasonably dangerous because it lacked appropriate [safety features]."  (Doc. 1, Ex. A at 20.)  Count Two also averred that Superior, Inc. "failed to provide adequate warnings and instructions for the safe use of the fluid delivery system."  (*Id.*)  Lastly, Count Two alleged that this wrongful conduct proximately caused Jason Bolin's personal injuries.  (*Id.*)  The initial Complaint also, in Count Four, asserted a failure to

provide a safe place to work against Superior, Inc.'s subsidiaries: Superior GP, Superior Ltd., and Bradford, stating that these entities "failed to supply appropriate safety features which should have been incorporated in the fluid delivery system," and that "[h]ad such [safety] devices been in use, the explosion would not have occurred." (*Id.* at 21-22.)

Count One of the Bolins' Second Amended and Re-Stated Complaint likewise attributes wrongful conduct to Superior, Inc. with regard to the same fluid delivery system, again alleging that this wrongful conduct proximately caused the November 16, 2006 accident, which in turn caused Jason Bolin's personal injuries. (Doc. 77 at ¶¶ 10-18.) That the amendment asserts a claim against Superior, Inc. for failing to provide a safe place to work by negligently reducing operating expenses, rather than asserting a claim against it under the AEMLA, is of little consequence, especially because Count Four of the initial Complaint asserted negligence against Superior, Inc.'s subsidiaries for failing to provide a safe place to work by failing to supply a safe fluid delivery system. *See Ex Parte Empire Gas Corp.*, 559 So. 2d 1072, 1074-75 (Ala. 1990) (allowing amendment that added malicious prosecution claim against parent in part because initial complaint asserted malicious prosecution claim against parent's subsidiaries based on same occurrence). In essence, Count One of the Second Amended and Re-Stated Complaint merely "alter[s] . . . the mode[] in which [Superior, Inc.] . . . caused the injury" to Jason Bolin. *See McGehee*, 80 So. 2d at 260 (citation omitted). And, it makes more definite what the Bolins attempted to set out in Count Four of their initial Complaint, namely that Superior, Inc's negligent reduction of operating expenses in part caused the subsidiaries' failure to supply a safe fluid delivery

10

system.  The nature of the relief sought, compensatory damages for Jason Bolin's personal injuries, as well as the occurrence that gave rise to the Bolins' claims, the November 12, 2006 accident, remain unchanged.  For these reasons, the court finds the Superior defendants' relation-back argument as to Count One to be unpersuasive.

The Superior also defendants contend that Count One is due to be dismissed because it "attempt[s] to assert a novel and unique cause of action not previously recognized under Alabama law."  (Doc. 77 at 4-5.)  Specifically, the Superior defendants argue that "[t]he concept of piercing the veil is not a cause of action in and of itself under Alabama law; it is a remedy available when a corporate entity has been found liable and a plaintiff seeks to hold a third-party accountable for the judgment."  (Doc. 77 at 5-6.)  So, the Superior defendants maintain that to pierce the corporate veil, the Bolins "must first establish liability on the part of the corporate entity to be pierced – in this case Superior, Ltd.," which the Superior defendants note is not a party to the case and is immune from suit pursuant to the exclusivity provisions of the Alabama Workers' Compensation Act.[2]  (*See id.* at 4, 6.)  In response, the

---

[2] The exclusivity provisions of the Alabama Workers' Compensation Act are set out in sections 25-5-52 and 25-5-53 of the Alabama Code.  *Richardson v. PSB Armor, Inc.*, 682 So. 2d 438, 440 (Ala. 1996).  Section 25-5-52 states that:

> Except as provided in this chapter, no employee of any employer subject to this chapter . . . shall have a right to any other method, form, or amount of compensation or damages for an injury or death occasioned by an accident or occupational disease proximately resulting from and while engaged in the actual performance of the duties of his or her employment and from a cause originating in such employment or determination thereof.

Ala. Code. § 25-5-52 (1975).  Similarly, section 25-5-53 provides in pertinent part that:

Bolins insist that "the 'piercing the corporate veil' concept is not a 'novel or unique' cause of action," and argue that the law recognizes an exception to the rule "that a shareholder is not liable for the corporation's obligations . . . where the alleged wrong can be traced to the parent and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership." (Doc. 81 at 31.) In their reply, the Superior defendants point out that even if the Bolins successfully convince the court "to 'disregard the corporate existence' of Superior, Ltd., the resulting entity will be Jason Bolin's employer, and the exclusivity provision of the Alabama [Workers' Compensation] Act will still apply." (Doc. 84 at 4.) The court agrees.

The Supreme Court of Alabama has considered whether the immunity provided to a statutory "employer," as defined by the Alabama Workers' Compensation Act,[3] extended to the parent company of the employer, in a case where the plaintiff employee alleged that the parent company and his employer "were one and the same." *Misslidine v. Avondale Mills, Inc.*, 415 So. 2d 1040, 1041 (Ala. 1981). Indeed, in *Misslidine v. Avondale Mills, Inc.*, the Alabama Supreme Court held that where the parent company and subsidiary were effectively

---

Except as provided in this chapter, no employer shall be held civilly liable for personal injury to or death of the employer's employee, for purposes of this chapter, whose injury to or death is due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or occupational disease originates in the employment.

*Id.* § 25-5-53.

[3] The Alabama Workers' Compensation Act defines the term "employer" as "any person, corporation, copartnership, or association, or group thereof," which "employs another to perform a service for hire and pays wages directly to the person." Ala Code § 25-5-1(4).

"one legal entity," the parent company was entitled to immunity unless the dual-capacity doctrine applied.[4]  *Id.* at 1042.  The case involved a textile worker who filed suit against his employer, a cotton textile mill, and also against the parent company that owned the textile mill, alleging that both entities "negligently failed to provide [him] with a reasonably safe place to work and safety equipment or appliances with which to do his job," and that their negligence "caused him to become afflicted with byssinosis (brown lung)."  *Id.* at 1041.  To establish that the parent company owed him a duty, the textile worker argued that the parent company and the cotton textile mill were essentially "one and the same," and therefore "only one legal entity was involved."  *Id.*  The court rejected the textile worker's attempt to circumvent the exclusivity provisions of the Alabama Worker's Compensation Act, stating that if the parent company and the cotton textile mill were indeed "one legal entity," thereby

---

[4] Under the dual-capacity doctrine, "an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer."  *Ritchie v. Bridgestone/Firestone, Inc.*, 621 So. 2d 288, 289 (Ala. 1993) (quoting 2A A. Larson, *The Law of Workmen's Compensation*, § 72.80, at 14-112 (1976)). The Alabama Supreme Court  has further clarified the dual-capacity doctrine, stating that:

> The decisive test to determine if the dual-capacity doctrine is invocable is not whether the second function or capacity of the employer is different and separate from the first.  Rather, the test is whether the employer's conduct in the second role or capacity has generated obligations that are unrelated to those flowing from the company's or individual's first role as an employer.  If the obligations are related, the doctrine is not applicable.

*Therrell v. Scott Paper Co.*, 428 So. 2d 33, 37 (Ala. 1983) (quoting *McCormick v. Caterpillar Tractor Co.*, 423 N.E.2d 876, 878 (Ill. 1981)).  To date, however, the Alabama Supreme Court has rejected every attempt to invoke the doctrine.  *See Lee v. Longhorn Steaks of Ala., Inc.*, 662 So. 2d 672, 675 (Ala. 1995); *see also* Jenelle Mims Marsh & Charles W. Gamble, *Alabama Law of Damages* § 21:9 (5th ed. 2005) ("While the Alabama Supreme Court has recognized the doctrine, it has yet to have a situation suitable for the application of the doctrine . . . .").

creating a duty on the parent company to the textile worker, then the parent company "would be entitled to the immunity provided by the Workmen's Compensation Act, unless it fits within the exception of the dual capacity doctrine." *Id.* at 1042.  The court noted that the dual-capacity doctrine did not apply, however, because the parent company "undertook no special independent relationship toward [the textile worker] other than that of employee-employer." *Id.*  As a result, the court held that "any claim against [the parent company] would have to proceed under the Workmen's Compensation Act." *Id.*

In the instant case, as aforementioned, Count One alleges that "[t]he control exercised by Superior GP and Superior Inc. over Superior Ltd. was so pervasive and so dominating that Superior Ltd. had no real separate corporate existence," and that "[b]ecause of the control and domination Superior GP and Superior Inc. exercised over Superior Ltd. those two entities owed a duty to provide safe equipment and working conditions to those persons who worked out of the Cottondale, Alabama facility." (Doc. 73 at ¶¶ 12, 15.)  Accepting these factual allegations as true, as required when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), *Hill*, 321 F.3d at 1335, then Superior, Inc., Superior GP, and Superior Ltd. were effectively "one legal entity," and all owed a duty to Jason Bolin.  However, as in *Misslidine*, all three entities would also be entitled to the immunity provided by the Alabama Worker's Compensation Act, unless the dual capacity doctrine applies.  *Misslidine*, 415 So. 2d at 1042.  Nothing in Count One of the Bolins' Second Amended and Re-Stated Complaint suggests that Superior, Inc.'s conduct "generated obligations that are *unrelated* to those flowing from the company's . . . first role as employer."  *See Therrell*, 428 So. 2d at 37 (quoting

14

*McCormick*, 423 N.E.2d at 878) (emphasis added).  For these reasons, the court agrees with the Superior defendants; their Motion to Dismiss is due to be granted as to Count One.

**B.     COUNT TWO**

In Count Two, the Bolins allege negligent or wanton misconduct against Superior, Inc. and Superior GP, asserting in part that "Superior Inc., Superior GP and Superior Ltd. have acted in concert with a common plan to reduce their operation costs and save money by failing to institute corporate safety procedures and by allowing Superior Ltd. to use old, worn out and unsafe treatment iron and associated components."  (Doc. 73 at ¶¶ 19, 22.)  Count Two further alleges that "[b]ecause of the foreseeability of the harm that the plan posed to Superior Ltd.'s employees, the law imposed a duty on Superior Inc. and Superior GP to avoid that kind of risky conduct."  (*Id.* at 21.)

In their Motion to Dismiss, the Superior defendants contend that Count Two is due to be dismissed for reasons similar to why Count One should be dismissed.  (Doc. 77 at 9.) The court agrees in part.[5]  Simply put, although Count Two seems to allege that Superior, Inc. and Superior GP owed a duty to Jason Bolin for reasons other than their pervasive and dominating control over Superior Ltd., it remains that Count Two re-alleges the allegations of Count One.  (*See* Doc. 73 at ¶¶ 19-23.)  Thus, Count Two alleges that "Superior Ltd. had

---

[5] For the same reasons stated with regards to Count One, the court finds that the Superior defendants' argument that Count Two does not relate back to the Bolins' initial Complaint or Amended Complaint to be unavailing.  *See supra* Part III.A.

no real separate corporate existence" apart from Superior, Inc. and Superior GP.  (*See id.* at ¶ 12.)  But again, if Superior, Inc., Superior GP, and Superior Ltd. were all essentially "one legal entity," then all are immune from suit pursuant to the Alabama Worker's Compensation Act, unless the dual-capacity doctrine applies.  *Misslidine*, 415 So. 2d at 1042.  Because nothing in Count Two alleges conduct by Superior, Inc. or Superior GP, which "generated obligations that are *unrelated* to those flowing from the company's . . . first role as employer," the court finds that the Superior defendants' Motion to Dismiss is due to be granted as to Count Two.  *See Therrell*, 428 So. 2d at 37 (quoting *McCormick*, 423 N.E.2d at 878) (emphasis added).

## C.    COUNT THREE

Regarding Count Three, the Bolins again allege negligent or wanton misconduct against Superior, Inc. and Superior GP "based on their independent and direct participation in the operations of Superior Ltd. which allowed very dangerous conditions to exist in the Superior Ltd.'s operations conducted out of the Cottondale, Alabama operations center." (Doc. 73 at ¶¶ 24, 26.)  Specifically, the Bolins allege in part that "[b]y instituting the plan described [in Counts One and Two] Superior Inc. and Superior GP 'directly participated' in Superior Ltd.'s failure to provide its employees with reasonably safe work procedures and equipment," and that "[t]his direct participation and the underlying decision to save costs caused Superior Ltd. to expose its employees to an unnecessary risk of injury."  (*Id.* at ¶ 26.)

In arguing that Count Three is due to be dismissed, the Superior defendants again

incorporate their arguments with respect to Counts One and Two. (Doc. 77 at 10.) The court again agrees.[6] As with Count Two, Count Three likewise re-alleges the allegations of Count One. (Doc. 73 at ¶ 25.) As a result, the court finds that the Superior defendants' Motion to Dismiss is due to be granted as to Count Three for the same reasons the motion is due to be granted as to Counts One and Two. *See supra* Parts III.A-B. Additionally, because Counts One, Two, and Three constitute the only claims brought by Jason Bolin against Superior, Inc. and Superior GP, the Superior defendants' Motion to Dismiss Count Nine, Rachel Bolin's loss of services and consortium claim, is also due to be granted with respect to Superior, Inc. and Superior GP. *See Lyons v. Vaughan Reg'l Med. Ctr.*, LLC, No. 1071502, 2009 WL 1100928, at *5 (Ala. Apr. 24, 2009) (explaining that "[a] loss-of-consortium claim is derivative of the claims of the injured spouse,"and therefore the claim fails if the injured spouse's claim fails (quoting *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2008))). The Bolins' Second Amended and Re-Stated Complaint is therefore due to be dismissed with respect to Superior, Inc. and Superior GP. However, as the court informed the parties at the January 21, 2010 hearing, the court's order of dismissal will be without prejudice to the Bolins' right to file a Third Amended Complaint. In their Third Amended Complaint, the Bolins may reassert separate and discrete claims against Superior, Inc. and Superior GP to the extent they can assert claims based on Superior, Inc.

---

[6] However, as to their incorporated argument that Count Three does not relate back to the initial Complaint or Amended Complaint, (*see* Doc. 77 at 10), the court finds the argument to be without merit for the same reasons stated regarding Count One, *see supra* Part III.A.

and Superior GP's independent conduct, separate from the conduct of Superior Ltd.[7]

### D.   COUNT FIVE

With respect to Count Five, the Bolins allege negligent or wanton conduct against Bradford, (Doc. 73 at ¶¶ 33-36), alleging in part that "Bradford supplied Superior Ltd. with its equipment, including the trucks and treatment iron, pursuant to a lease that obligated Bradford to supply safe and operational components to Superior Ltd.," (*id.* at ¶ 35).  Count Five adds that "Bradford negligently or wantonly breached these duties by . . . provid[ing] substandard and weak treatment iron and related components, defective pumps without seal caps and [by] fail[ing] to supply appropriate pressure relief valves necessary for the safe operation of the treatment iron."  (*Id.*)

The Superior defendants first maintain that Count Five is due to be dismissed for failing to state a valid claim under Alabama law, in part because Jason Bolin was not a party to the lease between Bradford and Superior Ltd. and because Count Five fails to allege that "Bradford and Superior, Ltd. intended their agreement to bestow a direct benefit upon Jason Bolin."  (*See* Doc. 77 at 10-12.)  The Bolins, in response, point out that under Alabama law, "contractual provisions in contracts that were not intended to benefit the plaintiff are still

---

[7] The Bolins are reminded that any claims asserted against Superior, Inc. and Superior GP, which are premised on the allegation that Superior, Inc., Superior GP, and Superior Ltd. are all effectively one legal entity, will likely be subject to dismissal pursuant to *Misslidine*, 415 So. 2d at 1042.  Furthermore, any claims against Superior, Inc. and Superior GP based on the "duty to control" doctrine will likely be subject to dismissal as well.  *See In re Birmingham Asbestos Litig.*, 619 So. 2d 1360, 1362-63 (Ala. 1993) ("We therefore hold that, under Alabama law, the 'duty to control' doctrine may not be applied to hold a parent corporation liable for the acts of its subsidiary.").

significant because the plaintiff may rely on such provisions to create a duty, the breach of which is addressed in tort.  That is just the situation here . . . ."  (Doc. 81 at 32-33.)  The court agrees.  In *Evans v. Patterson*, for example, the Supreme Court of Alabama considered a personal injury case brought against a highway contractor by the passenger of an automobile that had collided with another automobile at an unmarked and arguably dangerous intersection.  *Evans v. Patterson*, 112 So. 2d 194, 196 (Ala. 1959).  The highway contractor had entered into a contract with the State of Alabama Highway Department to pave the highway that included the intersection; the contract obligated the highway contractor to "take all necessary precautions for the . . . safety of the public," and specified in part that "the contractor shall clearly mark all traffic hazards."  *Id.* at 196-97.  Addressing the highway contractor's argument that the passenger was not a party to the contract and could not sue for its breach or otherwise rely on the contract's provisions, the Alabama Supreme Court conceded that the passenger was not a party to the contract, but nevertheless recognized that the highway contractor owed the passenger a common law duty of due care under tort law, and held that "the contract can be considered in determining what would be due care under the circumstances."  *See id.* at 197-98.  As in *Evans*, the court finds that the allegations against Bradford contained in Count Five, along with their reasonable inferences, set out a valid claim under Alabama law.  Thus, the Superior defendants' first argument is without merit.

Still, the Superior defendants contend that the initial Complaint and Amended Complaint "do not allege any facts regarding a lease between Bradford and Superior Ltd.,"

and for that reason Count Five of the Second Amended and Re-Stated Complaint "cannot relate back because it alleges new operational facts setting forth an alternative form of recovery." (Doc. 77 at 11.)  The court disagrees.  Indeed, Count Four of the Bolins' initial Complaint asserts a claim of negligence against Bradford, stating in part that "Bradford had a duty to or undertook a duty to supply the plaintiff with a reasonably safe place to work and with reasonably safe equipment to work with," but that "Bradford negligently or wantonly breached these duties by failing to design safe fluid delivery systems." (Doc. 1, Ex. A at 22.)  Count Four also asserts that, "[a]s a proximate result of [Bradford's] wrongful conduct . . . Jason suffered numerous injuries." (*Id.*)  Count Five of the Bolins' Second Amended and Re-Stated complaint likewise asserts a claim of negligence against Bradford based on the exact same occurrence, the November 16, 2006 accident. (Doc. 73 at 33-36.)  That Count Five makes more specific how Bradford assumed a duty to supply Jason Bolin with a reasonably safe place to work and with reasonably safe equipment to work with, i.e. pursuant to a lease agreement with Superior Ltd., does not cause Count Five to not relate back.  *See Johnston-Tombigbee*, 937 So. 2d at 1044 ("[A]n amendment which merely makes more specific what has already been alleged . . . *will relate back even though the statute of limitations has run in the interim*." (quoting *Sonnier*, 806 So. 2d at 387)).  Therefore, the court is of the opinion that the Superior defendants' relation-back argument is without merit, and accordingly finds that their Motion to Dismiss is due to be denied as to Count Five.

### E.    COUNT SIX

As to Count Six, which again alleges negligent or wanton conduct against Bradford, the Bolins assert that "Bradford gave Superior Ltd. advice concerning the design and outfitting of the fluid delivery systems in use at the time of the explosion," but that Bradford "fail[ed] to require the use of a regular inspection and testing program," and "fail[ed] to advise, recommend or require appropriate pressure relief valves, warning valves, seal caps and other safety features."  (Doc. 73 at ¶ 38.)  Count Six adds that "[a]s a proximate result of Bradford's wrongful conduct, Jason Bolin suffered numerous injuries."  (*Id.* at ¶ 39.)

The Superior defendants again maintain that Count Six fails to state a valid claim under Alabama law, incorporating their arguments regarding Counts One and Two.  (Doc. 77 at 12.)  In response, the Bolins insist that Count Six states a valid claim by "alleg[ing] negligence in accordance with the provisions of Section 388 of the Restatement of Torts." (Doc. 81 at 32.)  The court agrees.

To be sure, the Supreme Court of Alabama has indeed adopted section 388 of the Restatement (Second) of Torts.  *See Abney v. Crosman Corp.*, 919 So. 2d 289, 293 (Ala. 2005).  Section 388 provides that:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> > **(a)** knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> >
> > **(b)** has no reason to believe that those for whose use the chattel is supplied

21

will realize its dangerous condition, and

**(c)** fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388 (1965).  Simply put, the court finds that the allegations in Count Six of the Bolins' Second Amended and Re-Stated Complaint, along with their reasonable inferences, state a claim under section 388 of the Restatement (Second) of Torts.

Nevertheless, the Superior defendants maintain that Count Six does not relate back because "[t]he original two complaints make no mention of a lease between Bradford and Superior, Ltd. to establish Bradford was a supplier of products and thereby liable under Section 388." (Doc. 84 at 14.)  For the same reasons stated as to Count Five, the court also finds that Count Six relates back to the Bolins' initial Complaint.  *See supra* Part III.D.  The Superior defendants' Motion to Dismiss is due to be denied as to Count Six.

**E.    COUNT SEVEN**

Count Seven asserts breach of implied warranty against Bradford, alleging that "Bradford, as the lessor of the trucks, treatment iron and associated equipment, impliedly warranted that the trucks, treatment iron and associated equipment were reasonably safe and merchantable and that the components were 'operational' and safe to be used." (Doc. 73 at ¶ 41.) Count Seven alleges a breach of this warranty "because the trucks, treatment iron and associated equipment were not reasonably safe and merchantable," and "[a]s a proximate result of the breach . . . Jason Bolin suffered numerous injuries."  (*Id.*)

In their Motion to Dismiss, the Superior defendants first argue that "[i]n order to prevail on a claim for breach of the implied warranty of merchantability, a plaintiff must allege and prove the defendant was a dealer or merchant of the kinds of goods in dispute," but that the Bolins "have failed to allege Bradford is a dealer or merchant in goods of such kind and, therefore, Count Seven is due to be dismissed." (Doc. 77 at 12-13.) In their Opposition to Motion to Dismiss, the Bolins first argue that "[w]hile Bradford claims it is not a merchant for purposes of UCC liability, facts supporting the allegations will be developed in discovery." (Doc. 81 at 31.) Also, the Bolins correctly point out that "Alabama law recognizes that non-merchants may be liable for breach of warranty arising from the use of products in connection with providing services," citing to a case involving an implied warranty of fitness for a particular purpose. (*See id.* at 31-32.) In response, the Superior defendants maintain that, "[t]o the extent the plaintiffs are alleging any breach of implied warranty of fitness for a particular purpose, the claim is still due to be dismissed for failure to allege the required element of reliance on the part of Superior, Ltd." (Doc. 84 at 15.)

The Superior defendants are correct that Count Seven does not expressly allege that Bradford is a merchant under the UCC, which is necessary for an implied warranty of merchantability to exist. *See* Ala. Code § 7-2-314 (1975). However, the court finds that Count Seven alleges "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the required element. *Twombly*, 550 U.S. at 556. That said, the court agrees with the Superior defendants that Count Seven does not allege facts suggesting reliance, which is necessary for an implied warranty of fitness for a particular purpose to

exist.  *See* Ala. Code § 7-2-315.  Thus, the Superior defendants' Motion to Dismiss is due to be granted in part and denied in part as to Count Seven, and Count Seven is due to be dismissed to the extent it alleges breach of an implied warranty of fitness for a particular purpose.  However, as with their claims against Superior, Inc. and Superior GP, the court's order of dismissal will be without prejudice to the Bolins' right to file a Third Amended Complaint.  In their Third Amended Complaint, set out in a separate count, the Bolins may reassert a discrete claim against Bradford for breach of an implied warranty of fitness for a particular purpose.  The Superior defendants' Motion to Dismiss is due to be denied as to Count Seven to the extent it alleges breach of an implied warranty of merchantability.

F.      **COUNT NINE**

Lastly, Count Nine, brought by Rachel Bolin, alleges a loss of services and consortium against all defendants.  (Doc. 73 at ¶¶ 47-49.)  As stated above, *see supra* Part III.C, because a loss of consortium claim is derivative of the claims of the injured spouse, the Superior defendants' Motion to Dismiss Count Nine is due to be granted as to Superior, Inc. and Superior GP, and Count Nine of the Bolins' Second Amended and Re-Stated Complaint  is due to be dismissed without prejudice as to Superior, Inc. and Superior GP.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, the court is of the opinion that the Superior defendants' Motion to Dismiss, (Doc. 77), is due to be granted in part and denied in part.  The Bolins'

Second Amended and Re-Stated Complaint is due to be dismissed without prejudice as to Counts One, Two, and Three, and also as to Count Nine as it relates to Superior, Inc. and Superior GP.  Count Seven is also due to be dismissed without prejudice to the extent it alleges breach of an implied warranty of fitness for a particular purpose.  The Bolins shall file a Third Amended Complaint on or before **April 2, 2010**.  An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

 **DONE**, this 25th day of March, 2010.


*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE