UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **JASON BOLIN; RACHEL BOLIN,** } | |
| } | |
| Plaintiffs, } | |
| } | |
| vs. } | **CASE NO. 7:08-cv-01100-SLB** |
| } | |
| **SUPERIOR WELL SERVICES, INC.;** } | |
| **SUPERIOR GP, LLC; BRADFORD** } | |
| **RESOURCES, LTD.; GEOMET, INC.;** } | |
| **FMC TECHNOLOGIES, INC.,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is currently before the court on defendants Superior Well Services, Inc. ("Superior, Inc."), and Superior GP, LLC's ("Superior GP") (collectively the "Superior defendants") Motion to Dismiss. (Doc. 121.)[1] Plaintiffs Jason Bolin and his wife, Rachel Bolin, (the "Bolins") have sued the Superior defendants for the personal injuries suffered by Jason Bolin while working for Superior Well Services, Ltd. ("Superior, Ltd."), alleging claims of negligence and breach of implied warranty. (*See* Doc. 115 at ¶¶ 10-22, 28-39.) Rachel Bolin has also brought a claim for loss of services and consortium. (*Id.* at ¶¶ 44-46.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the Superior defendants' Motion to Dismiss, (Doc. 121), is due to be denied.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I. **MOTION TO DISMISS STANDARD**

When deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept the allegations set forth in the complaint as true." *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993) (citations omitted); *see also Rivell v. Private Healthcare Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).

> The allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs. [*Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002).] However, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, [545], 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.2007). "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295 (quoting *Twombly*, [550 U.S. at 556]). This rule does not "impose a probability requirement at the pleading stage." *Twombly*, [550 U.S. at 556]. Instead, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element. *Id*. "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Watts*, 495 F.3d at 1296 (quoting *Twombly*, [550 U.S. at 556]).

*Rivell*, 520 F.3d at 1309.

"[T]he threshold that a complaint must meet to survive a motion to dismiss is 'exceedingly low.'" *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 38 (M.D. Ala. 2001) (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). "[A] defendant thus bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-736 (11th Cir. 1998) (citing *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)).

## II. FACTUAL AND PROCEDURAL HISTORY

The facts of the case, taken from the Third Amended and Re-Stated Complaint, (Doc. 115), and assumed as true for purposes of a motion to dismiss, are as follows:

1. The plaintiffs, Jason Bolin and his wife, Rachel Bolin, are residents of Tuscaloosa County, Alabama. On November 16, 2006, Jason Bolin was an employee of Superior Well Services, Ltd ("Superior, Ltd.").

2. The defendant, Superior Well Services, Inc., ("Superior, Inc.") is a Delaware corporation engaged in the oil field service business. Superior, Inc., operates a service center located in Cottondale, Tuscaloosa County, Alabama.

3. The defendant, Superior GP, LLC, ("Superior GP") is a Pennsylvania limited liability company wholly owned and managed by Superior, Inc.

4. In November 2006, defendant Bradford Resources, Ltd, ("Bradford") was a Pennsylvania limited partnership wholly owned by Superior, Inc. After the accident made the basis of this suit Bradford merged into Superior Well Services, Ltd.

5. The defendant, GeoMet, Inc., ("GeoMet"), is a foreign corporation with a place of business in Alabama. GeoMet is a developer and operator of methane gas properties.

6. The defendant, FMC Technologies, Inc., ("FMC"), is a Texas corporation. FMC designs, manufactures and assembles fluid delivery systems and components. FMC does business in Alabama.

7. On or about November 16, 2006, Jason Bolin was working for Superior, Ltd. in Bibb County, Alabama participating in a fluid-based stimulation service under the direction of GeoMet, Inc. The stimulation service, known as fracturing, is designed to improve the flow of oil and natural gas from producing zones. The procedure involves pumping a fluid mixture into the ground/ formation at high pressures to create a fracture in the chosen formation that becomes a pathway for hydrocarbons to flow into the wellbore and increase the bore's productivity.

8. On November 16, 2006, while the Superior, Ltd. crew was preparing for fracking operations to begin, components of the fluid system referred to as "treatment iron" suddenly broke or exploded with such force that Jason was thrown 8 to 10 feet into a fluid pit filled with contaminants and chemicals.

9. As a result of the explosion, Jason suffered severe and life threatening injuries, including a severely fractured hip and leg, severed arteries, loss of skin from above

>the right knee up to Jason's right armpit, and numerous other fractures and injuries. As a result of the injuries and complications, Jason's right leg had to be amputated.

(Doc. 115 at ¶¶ 1-9.)

After filing their Second Amended and Re-Stated Complaint on November 6, 2009, (Doc. 73), the Superior defendants filed a Motion to Dismiss, (Doc. 77). The court granted in part and denied in part the Superior defendants' Motion on March 25, 2010, dismissing the claims asserted against Superior, Inc. and Superior GP. (*See* Doc. 111 & 112.) However, the court's Order was without prejudice to the Bolins' right to file a Third Amended Complaint, with the court specifying that it would allow the Bolins to "reassert separate and discrete claims against Superior, Inc. and Superior GP to the extent they c[ould] assert claims based on Superior, Inc. and Superior GP's independent conduct, separate from the conduct of Superior Ltd." (Doc. 111 at 17-18, 24-25 (footnote omitted).)

Thereafter, on April 8, 2010, the Bolins filed their Third Amended and Re-Stated Complaint, alleging eight counts. (*Id.* at ¶¶ 10-46.) Count One alleges a claim of "Independent Negligence" against the Superior defendants. (*Id.* at ¶¶ 10-16.) Count Two asserts "Common Plan Liability," also against the Superior defendants. (*Id.* at ¶¶ 17-22.) Counts Three and Four allege negligence against GeoMet and Bradford, respectively. (*Id.* at ¶¶ 23-31.) Count Five asserts an additional claim of negligence against Bradford, and Count Six alleges that it is liable for breaching an implied warranty. (*Id.* at ¶¶ 32-39.) With respect to Count Seven, the Bolins have asserted that FMC is liable under the Alabama Extended Manufacturer's Liability Doctrine for negligence. (*Id.* at ¶¶ 40-43.) And finally,

under Count Eight, Rachel Bolin has alleged a claim for loss of services and consortium against all defendants. (*Id.* at ¶¶ 44-46.)

In response to the Bolins' Third Amended and Re-Stated Complaint, FMC filed an Answer. (Doc. 119.) However, the Superior defendants filed a Motion to Dismiss, asking that the court dismiss, with prejudice, Counts One, Two, and Eight. (Doc. 121.) The Bolins then filed their Opposition to Motion to Dismiss. (Doc. 127.) And, the Superior defendants thereafter filed a Reply to Plaintiffs' Opposition to Motion to Dismiss. (Doc. 128.)

### III. DISCUSSION

In their Motion to Dismiss, the Superior defendants request that the court "dismiss, with prejudice, Counts One, Two and Eight of the Plaintiffs' Third Amended and Re-Stated Complaint." (Doc. 121 at 1.) Specifically, the Superior defendants argue that "[t]he claims against the Superior defendants found in Counts One and Two of the Third Complaint are due to be dismissed because they do not state a cause of action recognized under Alabama law." (*Id.* at 2-3.) Additionally, the Superior defendants maintain that Count Eight, Rachel Bolin's claim for loss of services and consortium, "is derivative in nature and is due to be dismissed against the Superior defendants once Counts One and Two are dismissed." (*Id.* at 3 (citation omitted).) Given the overlap between Counts One and Two, and because the parties' arguments generally apply to both, the court will address the counts collectively.[2]

---

[2] With respect to Count Eight, Rachel Bolin's claim for loss of services and consortium, the court agrees that this claim is derivative in nature, and thus will survive the Superior defendants'

5

A. **COUNTS ONE AND TWO**

Count One of the Bolins' Third Amended and Re-Stated Complaint alleges a claim against the Superior defendants for their "Independent Negligence" in "advis[ing] and direct[ing] Superior, Ltd. and Bradford Resources."[3] (Doc. 115 at ¶ 13.) More precisely, the Bolins charge that, as a result of the Superior defendants' advice and direction of Superior, Ltd. and Bradford prior to November 11, 2006:

> (1) routine inspections of the treatment iron used by Superior, Ltd. were not performed; (2) routine testing of the treatment iron was not performed; (3) replacement iron was not acquired at regularly scheduled intervals; (4) Superior, Ltd. and Bradford purchased and used the lowest safety rated treatment iron; and (5) Superior, Ltd. and Bradford did not utilize safety devices such as pressure relief

---

Motion to Dismiss only if the Motion is denied as to Counts One and/or Two. *See Lyons v. Vaughan Reg'l Med. Ctr., LLC*, 23 So. 3d 23, 29 (Ala. 2009) (explaining that "[a] loss-of-consortium claim is derivative of the claims of the injured spouse," and therefore the claim fails if the injured spouse's claim fails (quoting *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2008))). Additional discussion regarding Count Eight is therefore unnecessary.

[3] The Bolins assert that Count One "is brought against [the Superior defendants] pursuant to the direct participant and independent wrongdoing principles of law discussed in" *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007). (Doc. 115 at ¶ 10.) In *Forsythe*, the Supreme Court of Illinois first recognized "direct participant liability" as a valid theory of recovery, stating that:

> Where there is evidence sufficient to prove that a parent company mandated an overall business and budgetary strategy *and* carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, that parent company could face liability. The key elements to the application of direct participant liability, then, are a parent's specific direction or authorization of the manner in which an activity is undertaken and foreseeability. If a parent company specifically directs an activity, where injury is foreseeable, that parent could be held liable. Similarly, if a parent company mandates an overall course of action and then authorizes the manner in which specific activities contributing to that course of action are undertaken, it can be held liable for foreseeable injuries.

864 N.E.2d at 238.

> valves in their treatment iron unless specifically directed to do so by the customer and only at the customer's expense.

(*Id.*) Count One also alleges that, prior to November 11, 2006, Superior, Inc. "negligently managed the Cottondale, Alabama service center from which Superior, Ltd. obtained its work orders, supplies and equipment." (*Id.* at ¶ 14.) The Bolins maintain that, because of their negligence in advising and directing Superior, Ltd. and Bradford, and as a result of Superior, Inc.'s additional negligent management prior to November 11, 2006, "Superior Ltd. did not provide its employees with reasonably safe equipment and this failure directly caused the explosion that caused Jason [Bolin] to suffer numerous injuries." (*Id.* at ¶ 16.)

Count Two, which first re-alleges the allegations of Count One, (*id.* at ¶ 17), adds that the Superior defendants "acted in concert with a common plan to reduce the Superior Ltd. operation costs and thereby increase the profits of Superior, Inc," (*id.* at ¶ 18). The Bolins contend that, "[b]y formulating and instituting the above described plan, Superior, Inc. and Superior GP placed Superior, Ltd.'s employees in harm's way," and that, "[b]ecause of the foreseeability of the harm that the plan posed to Superior Ltd.'s employees, the law imposed a duty on Superior, Inc. and Superior GP to avoid that kind of dangerous conduct." (*Id.* at ¶ 19.) Specifically, the Bolins claim that:

> [The Superior defendants] negligently or wantonly planned to reduce Superior, Ltd.'s operating costs by issuing management directives to Superior, Ltd. and Bradford such that: (1) routine inspections of the treatment iron used by Superior, Ltd. were not performed; (2) routine testing of its treatment iron were [sic] not performed; (3) buying replacement iron at regularly scheduled intervals was not performed, (4) Superior, Ltd. and Bradford purchased and used the lowest rated treatment iron; and (5) Superior, Ltd. and Bradford did not utilize safety devices such as pressure relief valves in their treatment iron unless specifically directed to do so by the customer and

only at the customer's expense.

(*Id.* at ¶ 20.) As a proximate cause of the aforementioned allegations, the Bolins assert that the Superior defendants should be held liable for Jason Bolin's injuries. (*Id.* at ¶ 22.)

**B.    THE SUPERIOR DEFENDANTS' MOTION TO DISMISS (DOC. 121)**

In their Motion to Dismiss, the Superior defendants recognize that the Bolins "seek to hold the Superior defendants liable for their 'direct participation and independent wrongdoing,'" but argue that the Bolins "have provided no Alabama precedent to support an argument [that] 'direct participant liability' is a recognized theory of recovery in Alabama."[4] (Doc. 121 at 5.) Instead, citing in part to *In re Birmingham Asbestos Litigation*, 619 So. 2d 1360 (Ala. 1993), the Superior defendants insist that "no such precedent exists." (*Id.* at 6.)

The Bolins do not address *Birmingham Asbestos Litigation* in their Opposition to Motion to Dismiss, (*see generally* Doc. 127); nevertheless, the court finds the case to be inapplicable. Indeed, *Birmingham Asbestos Litigation* involved plaintiffs who sought to hold parent corporations liable for the acts of their subsidiaries in manufacturing, installing, and/or selling products that contained asbestos. 619 So. 2d at 1361-62. The plaintiffs premised the parent corporations' liability merely on their voting interests in the subsidiary companies. *Id.* at 1362. To determine whether Alabama law recognized such a cause of action, the

---

[4] The Superior defendants likewise acknowledge the Bolins' reliance on *Forsythe v. Clark, USA, Inc.*, and recognize the applicability of *Forsythe* to the facts of this case. (*See* Doc. 121 at 5; Doc. 128 at 2.) Nevertheless, as stated above, the Superior defendants maintain that the cause of action recognized in *Forsythe* does not exist under Alabama law. (*See* Doc. 121 at 5-7 .)

United States Court of Appeals for the Eleventh Circuit certified to the Supreme Court of Alabama the question of "[w]hether under Alabama law the tort doctrine of 'duty to control' could be applied to hold a parent corporation liable for the acts of its subsidiary." *Id.* at 1361. In response, the Supreme Court of Alabama held that:

> It is well settled that a parent corporation, even one that owns all the stock of a subsidiary corporation is not subject to liability for the acts of its subsidiary unless the parent so controls the operation of the subsidiary as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation. However, the mere domination or control of a corporation by its stockholder cannot be enough to allow a piercing of the corporate veil; rather, there must be the added elements of misuse and harm or loss resulting from the misuse. Thus, it is the law in Alabama that a plaintiff must first 'pierce the corporate veil' before the parent corporation's liability may be established.

*Id.* at 1362 (internal citations omitted). The court then addressed the plaintiffs' position, advanced pursuant to section 315 of the Restatement (Second) of Torts,[5] that "a parent corporation should be liable for the acts of its subsidiary if (1) the parent controls the subsidiary and (2) the parent can foresee the harm that the subsidiary's actions may have." *Id.* The court rejected the plaintiffs' contention that "the § 315 duty to control should apply to *any* circumstance where one individual controls the actions of another and the other's

---

[5] Section 315 provides that:

There is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless
  (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
  (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Restatement (Second) of Torts § 315 (1965).

9

actions result in foreseeable harm," noting that "[n]o Alabama case ha[d] adopted this theory . . . [nor had t]he plaintiffs . . . shown that other jurisdictions ha[d] applied § 315(a) to establish a corporate parent's responsibility for its subsidiary's business activities." *Id.* As a result, the court retained its "long-held doctrine of piercing the corporate veil," holding that, "under Alabama law, the 'duty of control' doctrine may not be applied to hold a parent corporation liable for the acts of its subsidiary." *Id.* at 1362-63.

In the instant case, unlike the plaintiffs in *Birmingham Asbestos Litigation*, the Bolins do not seek to hold the Superior defendants derivatively or vicariously liable for the acts of Superior, Ltd. On the contrary, Counts One and Two of the Bolins' Third Amended and Re-Stated Complaint premise the Superior defendants' liability on the Superior defendants' own actions. (*See* Doc. 121 at ¶¶ 10-22.) Stated differently, the Bolins contend that the Superior defendants are liable not for their failure to control Superior, Ltd., i.e. the issue resolved by *Birmingham Asbestos Litigation*, but for their own allegedly negligent and/or wanton conduct in rendering decisions and issuing directives that specifically affected Superior, Ltd.'s employees, and which proximately caused Jason Bolin's injuries.[6] (*See id.*) Thus, the court finds that, under the facts alleged, *Birmingham Asbestos Litigation* does not resolve the issue before the court.

---

[6] That said, the court recognizes that the line between the Superior defendants' actions, as alleged in the Third Amended and Re-Stated Complaint, and the type of conduct that would otherwise be unactionable under *Birmingham Asbestos Litigation*, is a fine line at best. Therefore, while the court finds the case to be inapplicable given the Third Amended and Re-Stated Complaint's factual allegations, which the court must accept as true, *see Gonzalez*, 980 F.2d at 1419, the case may later support summary judgment when considering evidentiary submissions.

Still, while the court finds the Superior defendants' reliance on *Birmingham Asbestos Litigation* to be unpersuasive considering the Third Amended and Re-Stated Complaint's factual allegations, their argument that Counts One and Two fail to state valid causes of action under Alabama law remains an issue for consideration. In their Opposition to Motion to Dismiss, the Bolins respond that "[i]t is beyond cavil that negligence and wantonness are cognizable claims under Alabama law," and that *Forsythe* "did not add something brand-new to the American common law." (Doc. 127 at 3.) Instead, the Bolins point out that *Forsythe* merely "incorporated a doctrine that was approved and applied" by the Supreme Court of the United States in *United States v. Bestfoods*, 524 U.S. 51 (1998). (*Id.*)

In *Bestfoods*, which involved claims brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), the Court noted that although "[i]t is a general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries," various exceptions exist, including piercing the corporate veil. 524 U.S. at 61-62 (citations omitted). Importantly, however, the Court made clear that in addition to derivative liability, "nothing in [CERCLA] bars a parent corporation from direct liability for its own actions in operating a facility owned by its subsidiary." *Id.* at 64. The Court explained:

> [D]erivative liability cases are to be distinguished from those in which "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management" and "the parent is directly a participant in the wrong complained of." In such instances, the parent is directly liable for its own actions.

*Id.* at 64-65 (citations and internal footnote omitted).[7]

In addition to *Bestfoods* and its progeny, the Bolins also cite to *Kennedy v. Western Sizzlin Corp.*, 857 So. 2d 71 (Ala. 2003), which the Bolins maintain supports their position that Counts One and Two of their Third Amended and Re-Stated Complaint state valid causes of action. (*See* Doc. 127 at 7-9.) In *Kennedy*, several restaurant employees alleged sexual harassment against their manager, filing suit against the manager and the restaurant, a franchisee of The Western Sizzlin Corporation ("WSC"). *Id.* at 73. The employees also brought, *inter alia*, "direct-negligence" claims against WSC. *Id.* at 73-74. In response, WSC moved for summary judgment with respect to two of the employees' claims, i.e. Ronda Kennedy and Lisa Pate, and later moved for summary judgment as to the remaining employees' claims. *Id.* at 74-75. WSC's initial briefs and arguments were identical for both motions, each procedurally deficient regarding the employees' direct-negligence claims in that WSC failed to state a basis for summary judgment. *Id.* However, WSC later filed a supplemental argument with regard to its second motion for summary judgment, arguing, *inter alia*, that it owed no duty of care to the employees that could support their direct-

---

[7] As additional support, (*see* Doc. 127 at 4-7), the Bolins also cite to opinions of the United States Court of Appeals for the Third Circuit and the United States District Court for the Northern District of Florida, both of which applied *Bestfoods* and recognized that, in certain scenarios, a parent corporation may be "subject to direct, rather than derivative or vicarious liability," *In re: Managed Care Litig.*, 298 F. Supp. 2d 1259, 1309 (S.D. Fla. 2003) (citation omitted); *see also Pearson v. Component Tech. Corp.*, 247 F. 3d 471, 487 (3rd Cir. 2001) ("[I]t has long been acknowledged that parents may be 'directly' liable for their subsidiaries' actions when the 'alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management,' and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership." (quoting *Bestfoods*, 524 U.S. at 64)).

negligence claims. *Id.* at 75. By contrast, WSC did not supplement its motion regarding Kennedy and Pate's claims. *Id.* Nevertheless, the trial court granted summary judgment on all claims. *Id.*

On appeal, the Supreme Court of Alabama affirmed WSC's second motion for summary judgment, but reversed the trial court with respect to Kennedy and Pate's direct-negligence claims. *Id.* at 79. Specifically, the court noted that as to Kennedy and Pate, "WSC did not devote any portion of its argument to the direct-negligence claims," and, as such, "the burden of creating, by substantial evidence, a genuine issue of material fact as to the direct-negligence claims never shifted to Pate and Kennedy." *Id.* at 78. Notably, however, then Chief Justice Roy Moore entered a dissenting opinion regarding Pate and Kennedy's direct-negligence claims. *Id.* at 79-80. In the dissent, Chief Justice Moore stated that "[t]he so-called 'direct-negligence' claims alleged are claims that Alabama courts have never recognized." *Id.* at 80 (Moore, J., dissenting). Accordingly, Chief Justice Moore disagreed with the majority and would have affirmed the trial court's grant of summary judgment as to those claims. *Id.*

The Bolins contend that, in *Kennedy*, the majority of the Supreme Court of Alabama seemingly recognized the validity of a direct-negligence cause of action, and therefore posit that *Kennedy* represents "at least one method under Alabama law, beyond piercing the corporate veil, for holding the Superior Defendants liable under the claims asserted in Counts

13

One, Two and Eight of the Bolins' Third Amended and Re-Stated Complaint."[8]  (Doc. 127 at 8-9.)  In response, the Superior defendants emphasize that the Supreme Court of Alabama affirmed WSC's second motion for summary judgment, and only reversed the motion with respect to Kennedy and Pate's claims due to procedural deficiencies.  (Doc. 128 at 4.)  For that reason, and noting Chief Justice Moore's dissent, the Superior defendants argue that "[the Bolins'] reliance on the case is rather disingenuous as a full reading of *Kennedy* reveals the Court refused to apply a duty of care on [WSC] to maintain a safe working environment for franchise employees."  (*Id.* at 5.)  As such, the Superior defendants maintain that this court should, "[i]n keeping with the Alabama Supreme Court's holding in *Kennedy* . . . dismiss these claims against the Superior defendants because they do not state a cause of action under Alabama law."  (*Id.*)

The court finds the Superior defendants' interpretation of *Kennedy* to be overly broad.  *See Kennedy*, 857 So. 2d at 79.  In affirming the trial court, the Supreme Court of Alabama simply did not explicitly address the validity of the employees' direct-negligence causes of action.  *See generally id.* at 73-79.  And, though WSC, in its supplemental argument to its second motion for summary judgment, had argued that it owed no duty of care to the employees, *id.* at 75, affirming the trial court's granting of that motion does not mean that

---

[8] Several commentators have seemingly reached the same conclusion.  *See* Ellen M. Bublick, *Tort Suits filed by Rape and Sexual Assault Victims in Civil Courts: Lessons for Courts, Classrooms and Constituencies*, 59 SMU L. Rev. 55, 88 n. 215 (2006) (noting that *Kennedy* recognized the possibility that WSC was liable on Pate and Kennedy's direct negligence claim); *see also Court Revives Direct Negligence Claims Against Franchisor*, 6 Emp. L. Rep. 10 (2003) (summarizing the factual and procedural history of *Kennedy*).

14

a direct-negligence cause of action does not exist under Alabama law, nor does it indicate that a parent company never owes a duty of care to its subsidiary's employees. On the other hand, the court agrees with the Bolins that, by reversing the trial court with respect to Kennedy and Pate's direct-negligence claims, the majority of the court recognized, at least implicitly, the validity of the claims. (*See* Doc. 127 at 8.) Simply put, if the majority had not recognized the claims' possible validity, the court would have, as Chief Justice Moore had recommended in his dissent, *see Kennedy* , 857 So. 2d at 79-80, disregarded the underlying procedural defect, and affirmed the trial court's decision, *see* Ala. R. Civ. P. 61 ("The court at every stage of the proceeding *must* disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.") (emphasis added).

For all that, the court need not rely solely on *Kennedy* in determining whether Counts One and Two of the Bolins' Third Amended and Re-Stated Complaint state valid causes of action under Alabama law. Indeed, in *Procter & Gamble Co. v. Staples*, the Supreme Court of Alabama considered the liability of a parent company in the death of one of its wholly owned subsidiary's employees, who was killed in an industrial accident while on the subsidiary's premises. 551 So. 2d 949, 950 (Ala. 1989). The employee's widow had alleged numerous causes of action against both the subsidiary and parent company, and specifically alleged that the parent company was liable for failing to provide a safe workplace, and that its failure proximately caused the industrial accident. *Id.* Citing section 25-1-1 of the

15

Alabama Code,[9] the court acknowledged that "[t]he duty of providing a safe workplace . . . is generally non-delegable to any party not within the business of the employer." *Id.* at 952. However, the court added that, "[c]onsistent with the statutory definition of 'employer' in § 25-1-1(c)(1) . . . we have recognized an exception to the foregoing general rule when an *outside* party is in 'control or custody' of the worker's employment." *Id.* at 953. The court noted that, to state a cause of action under the exception, "the plaintiff [must] prove that the defendant exercised control over the jobsite and control over the manner in which the work

---

[9] Section 25-1-1 provides in pertinent part that:

(a) Every employer shall furnish employment which shall be reasonably safe for the employees engaged therein and shall furnish and use safety devices and safeguards and shall adopt and use methods and processes reasonably adequate to render such employment and the places where the employment is performed reasonably safe for his employees and others who are not trespassers, and he shall do everything reasonably necessary to protect the life, health and safety of his employees and others who are not trespassers.
(b) Every employer and every owner of a place of employment, place of public assembly or public building, now or hereafter constructed, shall so construct, repair and maintain the same as to render it reasonably safe; provided, however, that nothing contained in this section shall be construed or applied so as to impose upon any such owner any duties to his tenant, the members of his family, employees, guests or invitees or others entering upon the premises under the tenant's title, or the public, not now imposed upon him by law.
(c) For the purposes of this section, the following terms shall have the meanings ascribed to them by this subsection:
    (1) EMPLOYER. Such term includes every person, firm, corporation, partnership, joint stock association, agent, manager, representative, foreman or other person having control or custody of any employment, place of employment or of any employee, but the terms of this section shall not be construed to cover the employment of agricultural workers or domestic servants.

Ala. Code § 25-1-1(a)-(c)(1).

16

was to be done, and prove either that the work was intrinsically dangerous or that the defendant had undertaken to provide safety on the jobsite." *Id.* (citations omitted). Applying the exception to the facts of the case, the court found that "[t]here [was] a complete absence in th[e]case of evidence that [the parent company] had control over the workplace, or, more importantly, that it controlled the manner in which [the subsidiary's] work was done," and therefore "conclud[ed] that [the parent company] did not undertake to provide plaintiff's decedent a safe place to work." *Id.* at 954.

While the Supreme Court of Alabama determined that the exception did not apply to the parent company given the lack of evidentiary support, it remains that *Staples* recognized a parent company's possible liability for injuries to its subsidiary's employees. As a result, because of this express recognition, and considering the at least implicit recognition of direct-negligence claims in *Kennedy*, the court finds that Counts One and Two of the Bolins' Third Amended and Re-Stated Complaint state valid causes of action under Alabama law.[10] For

---

[10] In a supplemental brief, the Superior defendants argue that the duty to provide a safe workplace, as discussed in *Staples*, requires a third-party to have "control over the jobsite," and, specifically, control "over the manner in which the work was performed." *See* 551 So. 2d at 953-54. The Superior defendants contend that the Bolins' Third Amended and Re-Stated Complaint fails to include factual allegations supporting this element, and therefore claim that *Staples* is inapplicable. The court disagrees. Indeed, the Bolins' Third Amended and Re-Stated Complaint alleges that the Superior defendants: (1) controlled many of the decisions regarding safety at Superior, Ltd., through their advice and direction of Superior, Ltd. and Bradford, (2) controlled Superior, Ltd.'s budget and operating costs, through management directives, and (3) actually controlled the Cottondale, Alabama service center prior to November 11, 2006, when Superior, Inc., not Superior, Ltd., operated the facility. (*See* Doc. 47 at ¶¶ 10-22.) The court finds that these allegations, taken as a true, are sufficient "'to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell*, 520 F.3d at 1309 (quoting *Watts*, 495 F.3d at 1295).

that reason, the court is of the opinion that the Superior defendants' Motion to Dismiss Counts One, Two, and Eight of the Bolins' Third Amended and Re-Stated Complaint is due to be denied.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that the Superior defendants' Motion to Dismiss, (Doc. 121), is due to be denied. An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

**DONE**, this 25th day of June, 2010.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE